2003 ME 51

**CITY OF BANGOR**

v.

**DIVA'S, INC.**

Supreme Judicial Court of Maine.

Submitted on Briefs: June 27, 2002.
Decided: April 15, 2003.

John K. Hamer, Esq., Bangor, for plaintiff.

On the date of publication of this opinion, Diva's, Inc. was not represented counsel, for defendant.

Panel: SAUFLEY, C.J., and CLIFFORD, RUDMAN, DANA, ALEXANDER, CALKINS, and LEVY, JJ.

SAUFLEY, C.J.

[¶ 1] Diva's, Inc., appeals from the judgment of the District Court (Bangor, *Russell, J.*) in which the court concluded that Diva's had violated two provisions of the Bangor Land Use Code related to nude entertainment and therefore ordered Diva's to pay a fine of $2000 and enjoined Diva's from presenting any nude entertainment in violation of the Code. Diva's contends that the ordinances are unconstitutional. We affirm the judgment of the District Court.

## I. BACKGROUND

[¶ 2] Diva's, Inc., whose capital stock is owned by Diane Cormier–Youngs, presents nude entertainment in Bangor. In recent years, the Bangor City Council has adopted ordinances aimed at regulating nude entertainment. Pursuant to section 228 and amendments of the Code, commercial establishments must obtain a certificate of occupancy from the City before presenting nude entertainment. Section 228 places limits on the geographical location of commercial establishments presenting nude entertainment by prohibiting such activity near schools, residential districts, and places of worship.

[¶ 3] In December 1999, by agreement with the City, Diva's was granted a certificate of occupancy effective until June 20, 2001. After that date, the City declined to renew Diva's certificate of occupancy for nude entertainment because of its close proximity to residences and a church. Upon the expiration of its certificate of occupancy, Diva's sought, and was granted, a liquor license from the City of Bangor and issued by the State of Maine, which permitted it to sell alcohol for consumption on the premises. In addition, Diva's was granted a special amusement permit for liquor licensees from the City, pursuant to section 61 of the Code. The special amusement permit allowed Diva's to provide music, dancing, and entertainment as a liquor licensee, subject to certain conditions, including a prohibition on presenting nude entertainment.[1]

---

1. Under section 61–17(C)(1)(c), licensees for the sale of liquor in Bangor are prohibited from offering entertainment that involves the "displaying of the genitals, pubic hair, buttocks, anus, or any portion of the female

[¶ 4] Notwithstanding the expiration of its certificate of occupancy and its new status as a liquor licensee and holder of a special amusement permit, Diva's continued to present nude entertainment. On June 22, 2001, Diva's invited the press and certain city officials to witness "an act of civil disobedience." A detective from the Bangor Police Department attended the event at Diva's and observed dancers dressed in only G-strings and pasties, exposing their buttocks and all but the areola of their breasts. On June 26, 2001, the detective returned to Diva's and observed dancers wearing only G-strings. He testified that he returned to Diva's eight more times, and that on each occasion the dancers were wearing G-strings and, at times, pasties.

[¶ 5] On June 29, 2001, the City filed a land use citation and complaint pursuant to M.R. Civ. P. 80K, alleging that Diva's had violated sections 228–14 and 61–17(C)(1)(c) of the Code.[2] Specifically, the City alleged that Diva's presented nude entertainment without a requisite certificate of occupancy and that the nude entertainment presented by Diva's violated the conditions of its special amusement permit for liquor licensees. Diva's filed a motion to dismiss the complaint, arguing that section 61–17 was unconstitutional. The District Court denied the motion and a trial was held on October 5, 2001.

[¶ 6] The District Court found that Diva's provided nude entertainment on June 22 and June 26, 2001, without the requisite certificate of occupancy and as a liquor licensee holding a special amusement permit, which prohibited nude dancing. Specifically, the District Court concluded that this conduct violated section

228 (prohibiting nude entertainment without a certificate of occupancy) and section 61 (prohibiting liquor licensees holding a special amusement permit from providing nude entertainment) of the Code. The District Court fined Diva's five hundred dollars for each violation of each ordinance and enjoined it from presenting any further nude entertainment in violation of section 61. This appeal followed.

## II. DISCUSSION

### A. Challenges to the Factual Findings

[¶ 7] Pursuant to M.R. Civ. P. 80K, a municipality has the burden of proving an alleged land use violation by a preponderance of the evidence. M.R. Civ. P. 80K(i). When an appellant challenges the sufficiency of the evidence to support a finding in a civil case in which the appellant did not bear the burden of proof, we review the record in the light most favorable to the trial court's judgment to determine if the findings are supported by competent evidence. *See Acadia Ins. Co. v. Keiser Indus., Inc.*, 2002 ME 57, ¶ 14, 793 A.2d 495, 498. "Where there is competent evidence in the record to support the court's findings, we will not disturb the factual findings of the court." *Sorey v. Sorey*, 1998 ME 217, ¶ 14, 718 A.2d 568, 571.

[¶ 8] Diva's argues that the City failed to meet its burden of proving land use violations, specifically, the presentation of nude entertainment, by a preponderance of the evidence. In particular, Diva's asserts that no evidence exists to establish a violation of Bangor's ordinances because the officer who testified at trial was unable to recount the specific names or descrip-

---

breasts at or below the areola thereof." BANGOR CODE § 61–17(C)(1)(c).

**2.** The citation alleged that four dancers were wearing only pasties, G-string thongs, garters, and high heel shoes on June 22, 2001, and that dancers were topless on June 26, 2001.

tions of the dancers he observed. At trial, however, the officer testified that he witnessed female dancers at Diva's with exposed buttocks and breasts or portions of the breasts at or below the areola, on ten occasions, including June 22 and June 26, 2001. In addition, Diva's owner, Diane Cormier–Youngs, admitted at trial that dancers at Diva's wear only G-string thongs and pasties when they perform.

[¶ 9] Competent evidence supports the court's finding that the activities that occurred at Diva's on June 22 and June 26, 2001, amounted to "nude entertainment" in violation of Bangor's ordinances. Given Diva's invitation to the public to observe "an act of civil disobedience," the owner's admission that the dancers exposed their buttocks and breasts, and the observation of that exposure by the officer, Diva's challenge of the trial court's findings fails. We find no clear error in the trial court's factual findings. *See Palanza v. Lufkin*, 2002 ME 143, ¶ 15, 804 A.2d 1141, 1146.

## B.  Challenges to the Legal Conclusions

▬ [¶ 10] Diva's asserts that the ordinances regulating nude entertainment constitute a prior restraint on speech and prohibit the free expression of protected speech without providing any reasonable alternative means of expression, in violation of the Maine and United States Constitutions.[3] The District Court disagreed with this assertion. We review the decision of the District Court for errors of fact

or law. As in this case, where the facts are established, the application of constitutional concepts to those facts is a question of law that is subject to de novo review on appeal. *See Bangs v. Town of Wells*, 2000 ME 186, ¶ 9, 760 A.2d 632, 635.

▬ [¶ 11] With respect to the protection of freedom of speech, the "Maine Constitution is no less restrictive than the Federal Constitution," *State v. Janisczak*, 579 A.2d 736, 740 (Me.1990), and in the context of the facts presented here, we find no occasion to interpret article I, section 4 in such a way as to create a result different from the result that would be reached in reliance on the First Amendment of the United States Constitution.[4]

[¶ 12] Nude dancing has been viewed by the United States Supreme Court as expressive conduct within the outer ambit of the First Amendment's protection, though only marginally so. *City of Erie v. Pap's A.M.*, 529 U.S. 277, 289, 120 S.Ct. 1382, 146 L.Ed.2d 265 (2000) (plurality); *Barnes v. Glen Theatre, Inc.*, 501 U.S. 560, 566, 111 S.Ct. 2456, 115 L.Ed.2d 504 (1991) (plurality). Because the ordinances at issue do not completely ban nude dancing, the appropriate inquiry in this case is whether the Bangor ordinances are content-neutral, designed to serve a substantial governmental interest, and allow for reasonable alternative avenues of communication. *See City of Los Angeles v. Alameda Books, Inc.*, 535 U.S. 425, 434–35, 122 S.Ct. 1728, 152 L.Ed.2d 670 (2002)

---

3.  The First Amendment to the United States Constitution provides: "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances." U.S. CONST. amend. I.

  The Maine Constitution provides, in pertinent part: "Every citizen may freely speak,

write and publish sentiments on any subject being responsible for the abuse of this liberty …" ME. CONST. art. I, § 4.

4.  Once again, it is not necessary for us to determine the extent to which our analysis of the protections inherent in article I, section 4 of the Maine Constitution may diverge from the First Amendment in the context of other facts. *City of Portland v. Jacobsky*, 496 A.2d 646, 649 (Me.1985).

(plurality) (citing *City of Renton v. Playtime Theatres, Inc.*, 475 U.S. 41, 46–50, 106 S.Ct. 925, 89 L.Ed.2d 29 (1986)).

C. The Bangor Ordinances

[¶ 13] Section 228–14 of the Bangor Code prohibits a commercial establishment from offering nude entertainment on its premises without first obtaining a certificate of occupancy.[5] BANGOR CODE § 228–14. This section also creates restrictions on the location of commercial establishments offering nude entertainment. It provides: "No certificate of occupancy shall be granted for a commercial establishment offering nude entertainment if the premises concerned are located within 500 feet of any other such establishment for which a certificate of occupancy, previously issued, remains in force; any establishment licensed to sell alcohol ... under M.R.S.A. 28–A § 601 et seq.; a church, chapel, parish house or other place of worship; or a public library, juvenile shelter or orphanage...." BANGOR CODE § 228–14(D)(1)(a). In addition, such establishments must not be located within 500 feet of the nearest residential zoning district boundary or the nearest property line of any "public or private school, school dormitory, or school ground, public playground" or city park. BANGOR CODE § 228–14(D)(1)(b)–(c).

[¶ 14] Section 61 prohibits those who choose to sell liquor from also presenting nude entertainment. BANGOR CODE § 61–17. In relevant part, section 61–17 provides: "No licensee shall permit entertainment on the licensed premises ... when the entertainment involves: ... (c) The actual or simulated displaying of the genitals, pubic hair, buttocks, anus or any portion of the female breast at or below the areola area thereof." BANGOR CODE § 61–17(C)(1)(c).

[¶ 15] The ordinances, in other words, allow the presentation of nude entertainment in Bangor, but regulate the location of such activity by prohibiting it in close proximity to schools, places of worship, and residential districts, and in commercial establishments holding a liquor license and a special amusement permit. As long as Diva's obtains a certificate of occupancy and is not licensed to sell alcohol on its premises, it is free to present nude entertainment within the areas of Bangor that are zoned for such activity. Therefore, section 228, which requires Diva's to obtain a certificate of occupancy, and section 61, which regulates the activities of liquor licensees holding special amusement permits, are properly analyzed as time, place, and manner regulations. *See Renton*, 475 U.S. at 46, 106 S.Ct. 925. Thus, in evaluating Diva's challenges to the two sections of the Bangor City Code, we first address the content neutrality of the ordinances.

D. Content Neutrality

■ [¶ 16] The United States Supreme Court has held that expression, whether oral, or written, or symbolized by conduct, may be subject to content-neutral regulations on time, place, and manner. *Clark v. Cmty. for Creative Non–Violence,*

---

5. This provision states: "No person operating a commercial establishment in the City of Bangor shall present or allow presentation of any form of nude entertainment on the premises of the establishment concerned without first obtaining a certificate of occupancy for that purpose from the city's Code Enforcement Officer." BANGOR CODE § 228–14. Nude entertainment is defined as "[a]ny display of live persons in a state of nudity, or in a visible state of sexual excitement whether or not clothed." BANGOR CODE § 228–13(B). Nudity is defined as: "[t]he showing of the human male or female genitals, pubic area or buttocks or the female breast below the top of the nipple or the depiction of covered male genitals in a discernibly turgid state." BANGOR CODE § 228–2(B).

468 U.S. 288, 293, 104 S.Ct. 3065, 82 L.Ed.2d 221 (1984); *Janisczak,* 579 A.2d at 739 n. 6. The principal inquiry in determining content neutrality is "whether the government has adopted a regulation of speech because of disagreement with the message it conveys." *Ward v. Rock Against Racism,* 491 U.S. 781, 791, 109 S.Ct. 2746, 105 L.Ed.2d 661 (1989). A government regulation that "serves purposes unrelated to the content of expression is deemed neutral, even if it has an incidental effect on some speakers or messages but not others." *Id.*

[¶ 17] The City has asserted that its ordinances regulating nude entertainment serve purposes that are unrelated to the content of expression. The legislative findings for section 228 of the Code indicate that the ordinance is aimed at preventing the harmful secondary effects of nudity, rather than the suppression of expression.[6] BANGOR CODE § 228–12. Section 61 indicates that its purpose is "to control the issuance of special amusement permits for music, dancing or entertainment in facilities licensed by the State of Maine to sell liquor under 28–A M.R.S.A. § 1054." BANGOR CODE § 61–15.

[¶ 18] In addition, the factual findings of section 228 and stated purpose of section 61 demonstrate that Bangor's regulation of nude entertainment is aimed at "purposes unrelated to the content of expression." *Ward,* 491 U.S. at 791, 109 S.Ct. 2746; *see also Renton,* 475 U.S. at 48, 106 S.Ct. 925 ("[C]ontent-neutral speech regulations [are] those that are *justified* without reference to the content of the regulated speech." (internal quotation marks omitted)). Although sections 228 and 61 may have an incidental effect on expression involving nudity in the areas of Bangor that are not zoned for nude entertainment, both ordinances serve justified purposes that are unrelated to the content of expression.

[¶ 19] Rather than completely banning all expression involving nudity throughout the City, sections 228 and 61 merely regulate the location and manner of nude entertainment, without reference to any expressive content that the nudity may convey. *See id.; Young v. Am. Mini Theatres, Inc.,* 427 U.S. 50, 81–82 n. 4, 96 S.Ct. 2440, 49 L.Ed.2d 310 (1976) (Powell, J., concurring) ("If [the city] had been concerned with restricting the message purveyed by adult theaters, it would have tried to close them or restrict their number rather than circumscribe their choice as to location."). Accordingly, we conclude that sections 228 and 61 are content-neutral regulations. We next address Diva's particular claims as they apply to the content-neutral provisions of the Code related to nude entertainment.[7]

---

6. The findings state, in pertinent part,
   (5) Unlimited commercial exploitation of nudity can induce individuals to engage in prostitution, sexual assaults, breaches of the peace and other criminal activity.
   (6) Displays of nudity in commercial establishments tend to create, and have created, a tawdry atmosphere which adversely affects the quality of life of Bangor's residents.
   . . . .
   (8) Commercial establishments offering nude entertainment should be sited in locations that minimize their negative effects on public health, safety and morals.

BANGOR CODE § 228–12(A).

7. Diva's also asserts that the regulations at issue constitute a prior restraint on speech. Because concepts of prior restraint do not apply on the facts before us, we reject Diva's argument. As we have noted, "[t]he concept of prior restraint refers to 'administrative and judicial orders *forbidding* certain communications when issued in advance of the time that such communications are to occur.'" *Cent. Me. Power Co. v. Pub. Utils. Comm'n,* 1999 ME 119, ¶ 12, 734 A.2d 1120, 1127 (quoting *Alexander v. United States,* 509 U.S. 544, 550, 113 S.Ct. 2766, 125 L.Ed.2d 441 (1993)).

E. Analysis of Content–Neutral Regulations

[¶ 20] We analyze Diva's claim employing the framework set forth in *United States v. O'Brien,* 391 U.S. 367, 377, 88 S.Ct. 1673, 20 L.Ed.2d 672 (1968). *See Pap's A.M.,* 529 U.S. at 289, 120 S.Ct. 1382. Under the four-part *O'Brien* test, courts analyze the constitutionality of content-neutral regulations by inquiring into whether: (1) they are within the constitutional power of government to enact; (2) they further an important or substantial government interest; (3) the government interest is unrelated to suppression of free expression; and (4) the incidental restriction on alleged First Amendment freedoms is no greater than is essential to furtherance of the government interest. *O'Brien,* 391 U.S. at 377, 88 S.Ct. 1673. Applying the *O'Brien* test to the present case, we conclude that section 228 does not prohibit protected speech in violation of the First Amendment of the United States Constitution or article I, section 4 of the Maine Constitution.

1. Authority of Municipality to Enact Regulations

[¶ 21] The first prong of the *O'Brien* test asks whether the ordinance is within the authority of the municipality to enact regulations. *Id.* The United States Supreme Court has recognized that municipalities are authorized, pursuant to their police powers, to enact laws to protect public health and safety. *See Pap's A.M.,* 529 U.S. at 296, 120 S.Ct. 1382. Pursuant to the Maine Constitution and statutory provisions, municipalities have been granted home rule authority, empowering them to "legislate on matters beyond those exclusively 'local and municipal'" and in all areas except where expressly prohibited by the Legislature or where the Legislature "has intended to exclusively occupy the field and the legislation would frustrate the purpose of a state law." *Sch. Comm. v. Town of York,* 626 A.2d 935, 939 (Me.1993).

[¶ 22] The Maine Constitution authorizes municipalities to alter and amend their charters on all matters local and municipal in character and provides that the Legislature shall prescribe the procedure by which the municipality may so act. ME. CONST. art. VIII, pt. 2, § 1. This provision affords municipalities "broad powers of legislation and administration of their affairs, provided there exists no express or implied prohibition by the Constitution or the general law." *Bird v. Town of Old Orchard,* 426 A.2d 370, 372 (Me. 1981).

[¶ 23] In addition, municipalities have been granted more expansive powers of home rule authority by statute. Pursuant to 30–A M.R.S.A. § 3001 (1996), "[a]ny municipality, by the adoption, amendment or repeal of ordinances or bylaws, may exercise any power or function which the Legislature has power to confer upon it,

Prior restraint is thus ordinarily deemed to have occurred when the government engages in some form of censorship or creates a licensing scheme which, by use of vague or unidentified terms, leave decisions regarding speech-based licenses in the unfettered discretion of a government actor. *See Shuttlesworth v. Birmingham,* 394 U.S. 147, 150–51, 89 S.Ct. 935, 22 L.Ed.2d 162 (1969); *see also FW/PBS, Inc. v. City of Dallas,* 493 U.S. 215, 225–27, 110 S.Ct. 596, 107 L.Ed.2d 603 (1990) (principal opinion of O'Connor, J., joined by Stevens, and Kennedy, JJ.) ("scheme that places 'unbridled discretion in the hands of a government official or agency' ... [or] that fails to place limits on the time within which the decisionmaker must issue the license" is unconstitutional (citations omitted)). The challenged ordinances do not directly implicate concerns regarding prior restraint.

which is not denied either expressly or by clear implication, and exercise any power or function granted to the municipality by the Constitution of Maine, general law or charter."

[¶ 24] Construing these two sources of home rule authority together, we have stated that "section 3001 constitutes an independent and plenary grant of power to municipalities to legislate on matters beyond those exclusively 'local and municipal,'" *Town of York*, 626 A.2d at 939, and that we will invalidate municipal legislation only: (1) where it conflicts with other constitutional provisions; (2) where the Legislature has expressly prohibited local regulation; or (3) where the Legislature has intended to exclusively occupy the field and the legislation would frustrate the purpose of a state law, *see id.* at 939; *Bird*, 426 A.2d at 372. Based on the City's home rule authority and the absence of an express prohibition or preemption by the Legislature, we conclude, subject to our remaining analysis for possible conflict with free speech protections, that the City acted within its authority when it enacted section 228–14.

### 2. Important or Substantial Government Interest

[¶ 25] The next inquiry under the *O'Brien* test is whether an ordinance serves an important or substantial government interest. 391 U.S. at 377, 88 S.Ct. 1673. The legislative findings of section 228–14 indicate that the ordinance is aimed at preventing the harmful secondary effects associated with nude entertainment. The findings state, *inter alia*, that such activities have created a tawdry atmosphere, adversely affecting the quality of life in Bangor. BANGOR CODE § 228–12(6). The City is entitled to rely on such legislative findings of fact. *Pap's A.M.*, 529 U.S. at 297–98, 120 S.Ct. 1382.

[¶ 26] Although the City offers no direct evidence to demonstrate that these secondary effects are a problem in Bangor, "the city need not 'conduct new studies or produce evidence independent of that already generated by other cities' to demonstrate the problem of secondary effects, 'so long as whatever evidence the city relies upon is reasonably believed to be relevant to the problem that the city addresses.'" *Pap's A.M.*, 529 U.S. at 296, 120 S.Ct. 1382 (quoting *Renton*, 475 U.S. at 51–52, 106 S.Ct. 925). The nude entertainment proscribed by Bangor's ordinances in establishments serving alcohol is similar to the entertainment described in numerous cases and the City could reasonably conclude that the same negative effects would result. *See Pap's A.M.*, 529 U.S. at 296–97, 120 S.Ct. 1382; *Renton*, 475 U.S. at 50–51, 106 S.Ct. 925; *Young*, 427 U.S. at 54–55, 96 S.Ct. 2440; *California v. LaRue*, 409 U.S. 109, 110–12, 93 S.Ct. 390, 34 L.Ed.2d 342 (1972). Thus, we conclude that section 228 serves important government interests.

### 3. Relationship to Suppression of Expression

[¶ 27] The third prong of the *O'Brien* test asks whether the government interest served by an ordinance is "unrelated to the suppression of expression." 391 U.S. at 377, 88 S.Ct. 1673. In *Barnes v. Glen Theatre, Inc.*, the United States Supreme Court held that a statute prohibiting public nudity was "unrelated to the suppression of free expression" because it was aimed at the nudity rather than erotic expression. 501 U.S. at 570, 111 S.Ct. 2456. The Court stated that "it was not the dancing that was prohibited, but simply its being done in the nude." *Id.* at 571, 111 S.Ct. 2456. In the same manner, section 228 is a content-neutral regulation that is aimed at preventing the harmful secondary effects

of nude entertainment. Based upon the legislative findings, the City adopted section 228 to protect "the public health, safety and morals." BANGOR CODE § 228–12(B). Because section 228 serves important governmental interests that are unrelated to the suppression of free expression, it satisfies the third prong of the *O'Brien* test.

### 4. Extent of Restriction

[¶ 28] Under the fourth prong of the *O'Brien* test, an incidental restriction on alleged First Amendment freedoms must be no greater than is necessary to achieve the government's purpose, 391 U.S. at 377, 88 S.Ct. 1673 providing reasonable alternative avenues for expression, *Cmty. for Creative Non–Violence*, 468 U.S. at 293, 104 S.Ct. 3065. In *City of Renton v. Playtime Theatres*, a zoning ordinance that prohibited adult theaters from locating within 1000 feet of residences, churches, parks, and within one mile of any school was held to permit reasonable alternative avenues of communication where 520 acres were zoned for adult theatres. 475 U.S. at 44–54, 106 S.Ct. 925. In that case, the Court noted all 520 acres need not be actually available. *Id.* at 54, 106 S.Ct. 925 ("That respondents must fend for themselves in the real estate market, on an equal footing with other prospective purchasers and lessees, does not give rise to a First Amendment violation.").

[¶ 29] In the present case, the trial court concluded "that there are substantial areas where a business providing 'nude entertainment' could be lawfully located within the city." The record reflects that Diva's introduced a map into evidence which demonstrated that 963 acres are potentially available for adult businesses in Bangor. Because the trial court's factual finding is

supported by competent evidence, it is not clearly erroneous. *Stickney v. City of Saco*, 2001 ME 69, ¶ 13, 770 A.2d 592, 600. Based on the record presented, we conclude that section 228's incidental restriction on speech is no greater than is necessary to achieve the government's purpose, providing reasonable alternative avenues for expression.

[¶ 30] Because section 228 is within the City's power to enact, furthers important government interests, is not related to the suppression of expression, and works incidental restrictions no greater than necessary to achieve the government's purpose of minimizing the negative effects associated with nude entertainment, we hold that it complies with the requirements of the First Amendment of the United States Constitution and article I, section 4, of the Maine Constitution.

### F. Prohibition Against Presenting Nude Entertainment for Liquor Licensees Holding Special Amusement Permits

■ [¶ 31] We now address Diva's claim that section 61–17, which prohibits liquor licensees from presenting nude entertainment, unduly burdens protected speech in violation of the state and federal constitutions. Less than ten years ago, we concluded that local ordinances which prohibited liquor licensees from providing nude entertainment did not violate the First Amendment. *Proctor v. County of Penobscot*, 651 A.2d 355, 357–58 (Me.1994) (citing *Gabriele v. Town of Old Orchard Beach*, 420 A.2d 252, 257 (Me.1980)). We are not persuaded that our holding in *Proctor* must be overturned. In *Proctor*, we relied on a series of United States Supreme Court cases that based their analysis on the Twenty-first Amendment.[8]

---

**8.** The Twenty-first Amendment states, in pertinent part: "The transportation or importa-

tion into any State, Territory or possession of the United States for delivery or use therein of

Although the Court has since reduced its reliance on the Twenty-first Amendment, it has never wavered from holding that states may regulate the activities allowed in establishments selling liquor.[9]

[¶ 32] Most courts that have addressed this specific issue have reached the same conclusion that states retain inherent powers to regulate nude entertainment where alcohol is sold for consumption on the premises. *See, e.g.*, *BZAPS, Inc. v. City of Mankato*, 268 F.3d 603, 605–08 (8th Cir. 2001) (finding concern about combination of alcohol and adult entertainment is not irrational and the city was entitled, under its police power, to prohibit the sale of alcohol in locations featuring adult entertainment), *cert. denied*, 536 U.S. 904, 122 S.Ct. 2356, 153 L.Ed.2d 179 (2002); *Sammy's of Mobile, Ltd. v. City of Mobile*, 140 F.3d 993, 999 (11th Cir.1998) (finding prohibition on nude dancing where liquor is sold restricts only the place or manner of nude dancing without regulating any particular message); *El Marocco Club, Inc. v. Richardson*, 746 A.2d 1228, 1234–39 (R.I. 2000) (holding prohibition on nude dancing in places where alcohol is served was a content-neutral regulation that constitutionally restricted time, manner, and places where nudity could occur). The few state courts, including the Supreme Court of Alaska and the Supreme Judicial Court of Massachusetts, that have taken a contrary approach interpret their state's constitutional free speech rights as prohibiting the exclusion of nudity based solely on the on-premises sale of alcohol. *See, e.g.*, *Mickens v. City of Kodiak*, 640 P.2d 818, 821 (Alaska 1982) (explaining that the Alaska State Constitution,[10] which does not contain a clause similar to the Twenty-first Amendment, prohibits cities from restricting expression otherwise protected by the First Amendment in places where liquor is sold); *Commonwealth v. Sees*, 374 Mass. 532, 373 N.E.2d 1151, 1155–56 (1978) (stating that in the absence of a provision giving a preferred position to regulation of alcohol, the free speech provision of Massachusetts Constitution[11] protects nudity in places licensed to sell alcohol); *see also* *Pap's A.M. v. City of Erie*, 571 Pa. 375, 812 A.2d 591, 603–08 (Pa.2002) (on remand from the U.S. Supreme Court, 529 U.S. 277, 120 S.Ct. 1382, 146 L.Ed.2d 265 (2000)) (interpreting its own state constitu-

intoxicating liquors, in violation of the laws thereof, is hereby prohibited." U.S. CONST. amend. XXI, § 2.

**9.** Previously, in *California v. LaRue*, the Supreme Court held that the First Amendment was not violated by regulations prohibiting grossly sexual exhibitions at establishments serving alcohol because states have broad power under the Twenty-first Amendment to regulate the use, distribution, and consumption of alcohol within its borders. 409 U.S. 109, 118–19, 93 S.Ct. 390, 34 L.Ed.2d 342 (1972). The Court in recent years has shifted away from reasoning that relies on the Twenty-first Amendment. *44 Liquormart, Inc. v. Rhode Island*, 517 U.S. 484, 516, 116 S.Ct. 1495, 134 L.Ed.2d 711 (1996). Nevertheless, the Court has unambiguously declared that "States' inherent police powers provide am-

ple authority to restrict the kind of 'bacchanalian revelries' described in the *LaRue* opinion regardless of whether alcoholic beverages are involved," and with respect to bans on nude entertainment in establishments where alcohol is served, the Court has stated that "the State has ample power to prohibit the sale of alcoholic beverages in inappropriate locations." *Id.* at 515, 116 S.Ct. 1495.

**10.** The Constitution of the State of Alaska provides, in pertinent part: "Every person may freely speak, write, and publish on all subjects, being responsible for the abuse of that right." ALASKA CONST. art. I, § 5.

**11.** The Commonwealth of Massachusetts Constitution provides, in pertinent part: "The right of free speech shall not be abridged." MASS. CONST. pt. 1, art. XVI.

tion[12] as providing more expansive protection for expression involving nudity than the protection provided by the First Amendment). We find no such right in the language of the Maine Constitution and are unpersuaded by the analysis of those courts.[13]

[¶ 33] Therefore, employing the same *O'Brien* analysis as described above, we conclude that section 61–17 complies with the requirements of the First Amendment of the United States Constitution and article I, section 4, of the Maine Constitution. First, the ordinance is within the City's authority to enact pursuant to its broad police powers. *See 44 Liquormart, Inc. v. Rhode Island,* 517 U.S. 484, 515, 116 S.Ct. 1495, 134 L.Ed.2d 711 (1996); *see also* 30–A M.R.S.A. § 3001 (1996) (granting home rule authority to municipalities). Second, the ordinance furthers the important government interest of controlling the issuance of special amusement permits for music, dancing, and entertainment for liquor licensees and preventing the harmful secondary effects associated with nude entertainment. *See Renton,* 475 U.S. at 47–52, 106 S.Ct. 925; *Young,* 427 U.S. at 62–63, 96 S.Ct. 2440. Third, section 61–17 is a content-neutral regulation that serves important governmental interests that are unrelated to the suppression of free expression. *See O'Brien,* 391 U.S. at 377, 88 S.Ct. 1673; *Barnes,* 501 U.S. at 569–70, 111 S.Ct. 2456. Finally, section 61–17's incidental restriction on speech is no greater than is necessary to achieve the government's purpose and provides reasonable alternative avenues for expression. *See O'Brien,* 391 U.S. at 377, 88 S.Ct. 1673; *Cmty. for Creative Non–Violence,* 468 U.S. at 293, 104 S.Ct. 3065. Accordingly, we hold that section 61–17 complies with the requirements of the First Amendment of the United States Constitution and article I, section 4, of the Maine Constitution.

The entry is:

Judgment affirmed.

---

**12.** The Constitution of the Commonwealth of Pennsylvania provides, in pertinent part: "The free communication of thoughts and opinions is one of the invaluable rights of man, and every citizen may freely speak, write and print on any subject, being responsible for the abuse of that liberty." PA. CONST. art. I, § 7.

**13.** *See supra* note 3.